FILED

10:24 am, 8/5/08

Joyce W. Harris
Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re ) | |
| ) | |
| ERIC WAYNE COLGAN and ) | Case No. 08-20215 |
| CHRYSTAL MICHELLE COLGAN, ) | CHAPTER 7 |
| ) | |
| Debtors. ) | |

## DECISION REGARDING MOTION FOR ORDER
## TO SHOW CAUSE AND/OR CONTEMPT CITATION

This matter came before the court on July 30, 2008 on debtors' Motion for Order to Show Cause and/or Contempt Citation regarding Money Now. The court, having reviewed the file and evidence, and considered the arguments of the parties, is prepared to rule.

### Jurisdiction

This court has jurisdiction on this matter pursuant to 28 U.S.C. §§157 and 1334. These are core proceedings under §157(b)(2)(G) & (E).

### Findings of Fact

Prior to filing for bankruptcy protection, Mrs. Colgan, ("Co-debtor") obtained a pay-day loan from Money Now. To obtain the loan, the Co-debtor issued a check to Money Now in the amount of $225.00 on April 19, 2008. In return, she received $200.00 cash. The remaining $25.00 was the service fee assessed by Money Now. The Co-debtor had a long-running relationship of obtaining pay-day loans through Money Now.

Historically, upon receiving her pay check, she would pay Money Now the $225.00 and received the post-dated check in return. In this case, she filed her bankruptcy on April 21, 2008 and assumed that the check she had written could not be cashed.

The specific check, (check no. 1092) was post-dated to May 3, 2008. Money Now presented the check to the bank for payment on May 5, 2008 which caused another of the debtors' checks to be dishonored. The bank assessed the Co-Debtor a $22.00 overdraft fee for that dishonored check.

The Co-debtor contacted the office of her bankruptcy attorney. Billie Alexander, the legal assistant for the Co-debtor's attorney, testified that she contacted the manager of Money Now, Mr. Chet Heil ("Heil"). Heil admitted that he received notice of the debtors' bankruptcy filing and refused to return the funds to the debtors. Mr. Heil argued that he had not received a "written" demand to turnover the money.

## Discussion

The filing of the Debtors' bankruptcy case prompted the automatic stay protection[1], which provides, in part:

> (a) Except as provided in sub-section (b) of this section, a petition filed under section 301...operates as a stay, applicable to all entities, of —
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise

---

[1] 11 U.S.C. § 362(a)(2007).

control over property of the estate[.]

Additionally, the Code provides that: "An individual injured by any willful violation of a stay...shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages."[2]

Certain actions are expressly excluded from the automatic stay, including "the presentment of a negotiable instrument and giving of notice of and protesting dishonor of such instrument[.]"[3] Under Wyoming law, a negotiable instrument is defined as:

> (a) Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
> (i) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
> (ii) Is payable on demand or at a definite time; and
> (iii) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but promise or order may contain (1) an undertaking or power to give, maintain, or protect collateral to secure payment, (2) an authorization or power to the holder or confess judgment or realize on or dispose of collateral, or (3) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

---

[2] 11 U.S.C. § 362(k) (2007).

[3] 11 U.S.C. §362(b)(11) (2007).

    (c)    An order that meets all of the requirements of subsection (a) except paragraph (a)(I), and otherwise falls within the definition of "check" in subsection (f) is a negotiable instrument and a check.

    (f)    "Check" means (1) a draft, other than a documentary draft, payable on demand and drawn on a bank or (2) a cashier's check or teller's check. An instrument may be a check even though it is described on its face by another term, such as "money order."[4]

The definition of "presentment" under Wyoming law, relevant to this case, is a:

"demand made by or on behalf of a person entitled to enforce an instrument (1) to pay the instrument made to the drawee or a party obligated to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (2) to accept a draft made to the drawee."

    (b)    Presentment may be made at the place of payment of the instrument and must be made at the place of payment if the instrument is payable at a bank in the United States; may be made by any commercially reasonable means, including an oral, written, or electronic person to whom presentment is made; and is effective if made to any one (1) of two (2) or more makers, acceptors, drawees, or other payors."[5]

The Tennessee bankruptcy court, in a case remarkably similar to the case before this court, determined that "presentment alone of a negotiable instrument is sufficient to fall within the scope of §362(b)(11)."[6] The check from the Co-debtor to Money Now was a negotiable instrument under Wyoming law. Money Now presented the check to the

---

[4] Wyo. Stat. §34.1-3-104 (2007).

[5] Wyo. Stat. §34.1-3-502 (2007).

[6] *In re Davison*, Case No. 07-32621, 2008 Bankr. LEXIS 459, (Tenn., Feb. 19, 2008).

bank. That is sufficient to meet the exception §362(b)(11). Money Now's action of presenting the check was not a violation of the automatic stay.

However, at the time of filing the bankruptcy case, the debtors' property and any interest held in property, including the checking account balance became property of the bankruptcy estate.[7] The exception to the automatic stay for presentment of a check does not provide an exception to the definition of property of the estate.[8] Cashing the Debtor's check, post-petition, is an unauthorized post-petition transfer, avoidable by the Chapter 7 trustee pursuant to 11 U.S.C. §549(a)(1) and (2)(B).[9]

Money Now was not prevented from presenting the Co-Debtor's check for payment but had an affirmative duty to turn over the $225.00, pursuant to the Bankruptcy Code. "[A]n entity...in possession, custody, or control, during the case, of property that the trustee may use, sell...or that the debtor may exempt...shall deliver to the trustee, and account for, such property or the value of such property..."[10]

The Tenth Circuit Bankruptcy Appellant Panel determined that:

> "The language of this turnover provision is mandatory. This mandatory language squares with the language and impact of the automatic

---

[7] 11 U.S.C. §541(a) (2007).

[8] *In re Meadows* 379, B.R. 737, 742 (Bankr. S.D. Ohio 2008).

[9] *Id.* at 744.

[10] 11 U.S.C. § 542(a) (2007).

stay. By requiring a creditor to turn over property of the estate upon the filing of a bankruptcy petition, Section 542(a) prevents the continued exercise of control over property of estates - a violation of the automatic stay. Section 542(a) works to avoid what Section 362(a) forbids - the retention of property of the estate after filing."[11]

The Kansas court, in *Hundley*[12], determined that when a creditor retains possession of property of the estate, after a case is filed, that creditor violates the stay by taking possession of the property and also in exercising control over the property. The United States Court of Appeals for the Tenth Circuit held that in order to demonstrate a violation of U.S.C. §362(k)(1), a debtor bears the burden of establishing, by a preponderance of the evidence, that the creditor knew of the automatic stay and intended the actions that constituted the violation; no specific intent is required.[13] Money Now's manager admitted to having knowledge that the debtors' bankruptcy had been filed. He also knew that he could not keep the funds, as evidenced by his description of the policy that Money Now had regarding funds that were involved in a bankruptcy. That policy included presenting the check to the bank to have the check returned, so that Money Now could take the debt off its books. This particular check was not returned. Money Now received the $225.00. Money Now did not return the funds to the debtors or the trustee but retained possession

---

[11]*In re Yates*, 332 B.R. 1 (B.A.P. 10th Cir. 2005).

[12]*In re Hundley*, Case No. 05-13580, Chapter 13, 2006 Bankr. LEXIS 245, (Kan., Feb. 7, 2006).

[13]*Johnson v. Smith*, 501 F.3d 1163 (Wyo. 2007).

of the funds, even after the check cleared the bank and after inquiry by debtors' counsel. Money Now's action was a deliberate and willful violation of the automatic stay for which sanctions are mandated by § 362(h).

## Conclusion

The court concludes Money Now willfully violated the automatic stay imposed by § 362(a) when it refused to turn over the $225.00 to the Debtors or trustee after notice of the bankruptcy filing.

The court will issue a separate judgment requiring Money Now to turn over the funds and will set a hearing on appropriate sanctions.

DATED this ____ day of August, 2008.

By the Court

_____
HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Stephen Winship
    Chet Heil
    Money Now